[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a marital dissolution action brought by complaint dated November 29, 1993. Based on the evidence adduced at trial, the court makes the following findings and orders.
The parties were married on July 22, 1989 in Farmington, Connecticut. For more than a year prior to the commencement of this action, both parties resided in Connecticut. No children have been born to the parties or to the plaintiff wife since the date of the marriage. The parties have been separated since November, 1993. By that time, the plaintiff had concluded that the marriage was hopeless. She was frustrated by the defendant's failure to work, his failure to continue his education, and his use of time and funds to play golf. While the defendant expressed surprise and dismay, he acceded to the plaintiff's request that he move from the residence. The court finds that the marriage has broken down irretrievably and should be dissolved. While neither party seeks alimony, and the parties agree with respect to the disposition of several assets, they have conflicting claims regarding certain stock, the defendant's interest in a family realty partnership, the proceeds from the sale of the marital residence, and certain other escrow accounts.
The plaintiff, whose birth name was Irene Bent, is forty seven years old. A registered nurse, she is a graduate of a three-year nursing program, and she has an undergraduate college degree. When the parties married, she was working as a product manager for a medical equipment company known as Haemonetics. Mrs. Parsons worked full time for this company from 1979 until CT Page 10117 1981, and then again from 1986 until 1994. Mrs. Parsons is currently employed as a registered nurse for Cive Biomedical, in Lexington, Massachusetts, earning an annual salary of approximately sixty two thousand ($62,000) dollars. She lives in a condominium located in Avon, Connecticut.
Mr. Parsons is presently forty seven years old. He completed high school and approximately one year of college. At the time of the marriage, and during its course while the parties resided together, Mr. Parsons held no outside employment. Prior to the marriage, he held a series of jobs, including various positions at a family-owned car dealership, the sale of vehicles on his own, employment at a hardware store, and work as a painter. Additionally, at one time he was licensed by the State of Maryland as a home improvement contractor. His last employment prior to the marriage was in 1987 at the car dealership. At present, he lives in Harlingen, Texas where he owns and operates a nine-hole golf course and driving range known as Whispering Winds Golf and Learning Center. His affidavit shows no income from this enterprise.
The parties knew each other as youngsters in kindergarten and then met again in the autumn of 1988. At the time, Mrs. Parsons was living in a home she owned in Hull, Massachusetts, and Mr. Parsons was living in a two-family home he owned in Plainville, Connecticut. Following a brief courtship, the parties decided in December to marry. In March, 1989, before their marriage, the parties purchased a home and lot in Farmington, Connecticut for one hundred fifty nine thousand nine hundred ($159,900) dollars. Because each of the parties had another residential mortgage outstanding, they borrowed funds for the purchase of the Farmington residence and lot from Parson's Realty Partnership at an interest rate of one point above the prime rate. In conjunction with the purchase of this property, the parties made a fifteen thousand nine hundred ninety ($15,990) dollar down payment which came from the defendant. Additionally, at the closing, the parties received a refund of four thousand six hundred twenty seven ($4627) dollars which appears to have been returned to Mr. Parsons. The parties refinanced the Farmington property in 1992 after Mrs. Parsons sold her Hull, Massachusetts property for one hundred twenty five thousand ($125,000) dollars. In conjunction with the sale of the Hull property, Mrs. Parson's received a net distribution of nine thousand ninety two ($9092) dollars from the closing and the sum of fifteen hundred ($1500) dollars for the sale of certain CT Page 10118 appliances. These funds were contributed by the plaintiff in conjunction with the 1992 refinancing.
During the parties' mutual occupancy of the Farmington home, they made several improvements and renovations to the property. While they paid outside contractors for some of the work, both parties performed physical labor on the residence and grounds. Since the plaintiff was then employed on a full time basis, and away from home several days a week, the defendant performed more of the physical labor. He was able, however, to pay golf several times a week during the years he indicated he was involved in these home improvement efforts.
The parties are in dispute with respect to their relative contributions to the marital residence subsequent to its purchase. With respect to the funding for the improvements, while the defendant had no employment, his income consisted of periodic gifts from his mother totaling approximately sixty thousand ($60,000) dollars, monthly rent payments from the Plainville property, and periodic interest payments from funds he had loaned, as demand notes, to the car dealership at a favorable interest rate. During this same time period, however, the plaintiff's income vastly eclipsed the defendant's. Tax returns adduced as evidence show that in 1989 Mrs. Parson's earned forty three thousand nine hundred thirty ($43,930) dollars compared to Mr. Parson's interest earnings of sixteen thousand four hundred eighty five ($16,485) dollars. In 1990, Mrs. Parsons had earnings of fifty one thousand seven hundred ($51,700) dollars compared to interest income of ten thousand thirty eight ($10,038) dollars attributable to Mr. Parsons. In 1991, Mrs. Parsons had earnings of forty seven thousand eight hundred five ($47,805) dollars compared to interest income of three thousand three hundred fifty four ($3354) dollars attributable to Mr. Parsons. In 1992, Mrs. Parsons had Social Security wages of fifty five thousand five hundred ($55,500) dollars while Mr. Parson's had interest income of two thousand seven hundred seventy six ($2776) dollars. Finally, in 1993, Mrs. Parsons had earnings from employment of sixty two thousand two hundred seventy four ($62,274) dollars while Mr. Parsons had interest earnings of two thousand five hundred eleven ($2511) dollars. While recognizing that Mr. Parsons also had rental income from the two family residence in Plainville, periodic gifts from his mother, and distributions from funds on loan to the car dealership, it is clear to the court that the plaintiff's earnings from employment were substantially greater than the defendant's receipt of funds from CT Page 10119 all sources during the years the parties lived together. In making this determination the court has considered the taxes and other deductions taken from the plaintiff's earned income. During the marriage, the parties maintained a checking account into which the plaintiff's income was deposited and into which most of the distributions, rental and interest income received from the defendant were deposited. This account, in the main, was used to pay for routine household expenses. Because the plaintiff earned considerably more from her employment than the aggregate total of the defendant's receipts, and because most of the parties receipts were deposited into a joint account from which routine household and marital expenses were paid, the court concludes, by inference, that the plaintiff's financial contributions toward household and marital expenses while the parties lived together was substantially greater than financial contributions made by the defendant.
The Farmington residence was sold by the parties for a gross sales price of one hundred sixty eight thousand ($168,000) dollars. After payment of the mortgage balance and closing costs, the parties received net proceeds of forty four thousand ($44,000) dollars, a sum which is being held in escrow pending order of this court.
During the marriage, the parties filed joint Federal and State tax returns. For Federal and State tax filings for the calendar year 1995, the parties received refunds totaling six thousand four hundred ninety nine ($6499) dollars. If the defendant had filed a return separately he would have received a refund of approximately two thousand ($2000) while the plaintiff, if she had filed separately, would have owed approximately three thousand ($3000) dollars. The defendant's accountant testified credibly that if the defendant had filed separately he would also have been able to carry certain losses forward to filings in later years. On this basis, the defendant argues that he should receive eighty percent (80%) of the tax refund. On the other hand, the plaintiff argues that the defendant should receive no more than one half the refund, representing more than he would have actually received in he had filed separately. The court is impressed that both parties decided, for their own reasons, to file joint returns in 1995. Based on all the factors relevant to a distribution of marital assets, the court finds no reason to alter the natural consequences of those joint filings that each of the parties should receive one half the resultant refunds. CT Page 10120
The parties also had in escrow the sum of fifteen thousand six hundred seven ($15,607) dollars, representing the net distribution to the defendant from the sale of his Plainville residence. Since these sums were derived from the sale of an asset held by the defendant prior to the marriage, and without evidence of substantial contribution by the plaintiff to its maintenance or appreciation, the court believes that the defendant solely is entitled to this amount.
The parties own several other assets which should not be distributed. The defendant has an interest in the Parson Realty Partnership which owns the real estate on which is located the Parson family car dealership. This partnership, which is comprised of the defendant and his four remaining siblings, was formed for the purpose of owning the land and buildings housing the dealership and to provide a cash stream to the defendant's mother. The defendant's interest in this entity has a value of approximately two hundred seventy thousand ($270,000) dollars. While there was considerable evidence concerning the nature and value of the defendant's interest in this asset, it is clear to the court that the defendant's ownership interest flows from the efforts or contributions of neither party, but is simply a happenstance of his good fortune is being a child of financially successful parents. The defendant also has an interest in certain demand notes with the car dealership. At the time of the marriage, his interest in these notes was approximately fifty eight thousand ($58,000) dollars, after payment of fifteen thousand ($15,000) toward the purchase of the parties' marital home. At this juncture, the account balance is approximately nineteen thousand ($19,000) dollars. The defendant has no interest in the dealership itself.
Since the separation of the parties, the defendant has purchased a golf course and driving range in Harlingen, Texas. He purchased this asset for two hundred thirty one thousand ($231,000) dollars, and spent an additional fifty thousand ($50,000) for equipment and supplies. To complete this transaction the defendant withdrew twenty three thousand ($23,000) dollars from funds on loan to the car dealership, borrowed fifty thousand ($50,000) from his mother as an advance on his inheritance, and borrowed approximately one hundred ninety thousand ($190,000) from a commercial lending institution in Texas. The plaintiff makes no claim with respect to this asset.
The defendant is also a contingent beneficiary of two trusts CT Page 10121 created by his father. In both cases, however, the trustees have discretion to pay both income and principal to the trusts' primary beneficiary, the defendant's mother, during her lifetime. As such, the defendant's interest in these assets is not readily measurable. The plaintiff makes and has no claim with respect to the defendant's interest in these trusts.
Prior to the marriage, and in conjunction with her employment, Mrs. Parsons was given the opportunity to purchase an interest in her company prior to a public offering of its stock. Accordingly, in 1988, Mrs. Parsons paid the sum of five thousand ($5000) dollars for a twenty share beneficial interest in an entity known as the Latham Labs Trust, an entity named for the founder of Haemonetics, and which owned fifty one (51%) percent of Haemonetics. Once Haemonetics became a public stock company in 1991, Mrs. Parsons twenty shares in the Latham Labs Trust were converted to twenty seven hundred (2700) shares of Haemonetics Corporation common stock. From 1992 until 1994, there were various transactions concerning this stock, including sales of stock in 1992, 1993, and 1994, and a stock split in 1993. On January 24, 1993, Mrs. Parson's sold her (then) remaining shares of stock and received a distribution of sixty eight thousand nine hundred forty four ($68,944) dollars. Mr. Parsons had no beneficial involvement in any transactions involving this stock. Except for the payment of taxes associated with the sale of a portion of this stock, none of the defendant's funds were implicated in the several transactions related to this stock. The substantial increase in the value of this asset purchased by the plaintiff prior to the marriage was due to market conditions. The plaintiff's gain is due to good fortune as well as to her substantial services to Haemonetics since her early employment with the company. In light of his lack of any significant involvement in the purchase or appreciation of this asset, and mindful of the parties' relative overall contributions to the marriage, the court finds that the defendant has no credible claim to this asset.
The parties own a approximately three hundred forty two shares of Haemonetics stock in joint names, with a present value of approximately thirty one hundred twenty ($3120) dollars. This stock should be sold and the proceeds divided equally between the parties.
In conjunction with her Haemonetics employment, the plaintiff participated in a 410k plan which has a present value CT Page 10122 of approximately one hundred twenty six thousand ($126,000) dollars. At the time of the marriage, the balance of this account was seventeen thousand ($17,000) dollars, and it was seventy three thousand ($73,000) dollars when the parties' separated. The continued increase in the value of this asset is due, in large part, to market conditions, and only in small measure to the plaintiff's contributions to it. The fact that this asset has increased in value during the marriage creates no automatic entitlement for the defendant to share in it. Co-existence during the course of marriage does not impel financial co-mingling. The defendant contributed nothing toward the purchase or appreciation of this asset. The plaintiff benefits from its ownership through her successful employment with Haemonetics and favorable market conditions.
Based on it's findings, and taking into consideration the parameters set forth in Chapter 815j of Connecticut General Statutes, and in particular the criteria set forth in 46b-81, the court makes the following orders:
A decree may enter dissolving the marriage on the basis that it has broken down irretrievably. The plaintiff shall be entitled to resumption of her birth name, Irene Bent.
Each party shall be entitled to ownership of the assets each owns separately.
The plaintiff shall be entitled to sole ownership of the escrow proceeds from the sale of the Haemonetics stock. The jointly owned Haemonetics stock, consisting of approximately 327 shares, shall be shared equally. If the stock can not be readily divided equally, it shall be sold and the net proceeds split equally.
From the escrow account holding the proceeds from the sale of the parties' Farmington property, the plaintiff shall be entitled to sixty (66.6%) percent and the defendant shall be entitled to forty (33.3%) percent.
The escrow account containing the tax refunds shall be split equally.
The defendant shall be entitled to sole ownership of the funds held in escrow from the sale of the Plainville residence. CT Page 10123
The court enters no order of counsel fees for either party.
Counsel for the plaintiff shall prepare the judgment filed. Judgment may enter accordingly.
Bishop, J.